MUFTHIHA SABARATNAM, ESQ.     (State Bar No. 162982)
LAW OFFICES OF MUFTHIHA SABARATNAM
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone No. (510) 205-0986
Facsimile No. (510) 225-2417
Proposed Counsel for Debtors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In Re:<br><br>**Marc S. And Dena J. Protenic**<br><br>Debtors. | **Case Number:18-41099 WJL**<br><br>Chapter 11<br><br>DECLARATION OF MARC PROTENIC IN SUPPORT OF **OBJECTIONS TO CLAIM BOSCO CREDIT, LLC, CLAIM #3**<br><br>DATE:  December 5, 2018<br>TIM E:  10.30 a.m.<br>CTRM:  220<br><br>1300 Clay Street<br>Oakland, CA 94612<br><br>Hon. W.J. Lafferty |

### DECLARATION OF MARC PROTENIC

I, Marc Protenic, hereby declare as follows:

I am the debtor in the above chapter 11 case. The facts stated below are of my personal knowledge, and if called upon to testify I could and would to the best of my ability.

1.     I commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq. on May 9, 2018.

2.     Claimant, **BOSCO CREDIT, LLC, CLAIM #3** has filed a Proof of Claim, on 6/29/2018. (See true and correct copy of Claim 2 attached as **Exhibit "1"**).

3.     The Proof of Claim states that the CLAIM is fully secured.

DECLARATION                                         - 1 -

4.      The POC on page 4 itemizes the amounts as:

**Total Claim Itemization**

Judgment Principal: $151,209.42

Post-Judgment Interest: $123,287.46

Total Claim Amount: **$123,287.46**(?) Not the same as the amount on claim.

5.      The property identified as security for the Claim, is listed on page 5, as, **22 Centennial Way, San Ramon, CA 94583.**

6.      Neither Dena Protenic nor I have any interest in this property. This is not property of this bankruptcy estate.

7.      Attached as Exhibit "2" are true and correct copies of Schedule A/B as filed with the petition.

DATED:      10/24/2018

BY:/s/
**Debtors-In-Possession**
(Signatures on File)

BY:/s/
**Debtors-In-Possession**
(Signatures on File)
See attached

EXHIBIT "1" POC of Bosco

| | |
|---|---|
| Debtor 1 | Marc S. Protenic |
| Debtor 2 (Spouse, if filing) | Dena J. Protenic |
| United States Bankruptcy Court for the: | Northern District of California |
| Case number | 18-41099 |

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Bosco Credit LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Franklin Credit Management Corporation<br>Name | Franklin Credit Management Corporation<br>Name |
| PO Box 2301<br>Number      Street | PO Box 829629<br>Number      Street |
| Jersey City          NJ          07303-2301<br>City              State          ZIP Code | Philadelphia          PA          19182-9629<br>City              State          ZIP Code |
| Contact phone 800-255-5897 | Contact phone 800-255-5897 |
| Contact email bk.info@franklincredit.com | Contact email bk.info@franklincredit.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____      Filed on ___ / ___ / _____
                                                                          MM   /  DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

6. **Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __1__ __8__ __6__ __2__

7. **How much is the claim?**

$_____274,496.88 . **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____
**Amount of the claim that is secured:** $_____
**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%
☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  06/29/2018
                  MM / DD / YYYY

/s/ Kristin A. Zilberstein
_____
Signature

Print the name of the person who is completing and signing this claim:

Name  **Kristin A. Zilberstein**
      First name        Middle name        Last name

Title  **Authorized Agent for Creditor**

Company  **The Law Offices of Michelle Ghidotti**
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  **1920 Old Tustin Ave.**
         Number        Street
         **Santa Ana**              **CA**        **92705**
         City                       State        ZIP Code

Contact phone  **949-427-2010**        Email  **kzilberstein@ghidottilaw.com**

### **Total Claim Itemization**

Judgment Principal:      $151,209.42

Post-Judgment Interest:    $123,287.46

Total Claim Amount:     **$123,287.46**

# HOME EQUITY LINE OF CREDIT AGREEMENT
# AND DISCLOSURE STATEMENT

PROTENIC
Loan #: .

DECEMBER 1, 2006      ANTIOCH      CALIFORNIA
[Date]      [City]      [State]

22 CENTENNIAL WAY, SAN RAMON, CA 94583
[Property Address]

| | | | |
|---|---|---|---|
| Credit Limit | $125,000.00 | Draw Period | 10 Years |
| Initial Advance | $46,670.00 | Repayment Period | 15 Years |
| Minimum Advance | $500.00 | Minimum Balance | $0.00 |
| Margin | 5.500% | | |

Initial ANNUAL PERCENTAGE RATE 13.750%

☒ **Initial Rate Not Discounted.** The Daily Periodic Rate is **0.0377%, which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated above**. The **ANNUAL PERCENTAGE RATE** may change and will be determined by adding the Margin described above to the Index (as defined in Section 1 below).

## 1. DEFINITIONS:

    **(A) "Agreement"** means this document.
    **(B) "You" or "Your"** is MARC S. PROTENIC.
Your address is **22 CENTENNIAL WAY, SAN RAMON, CA 94583.**
    **(C) "Lender"** is CAL STATE 9 CREDIT UNION.
Lender's address is **P.O. BOX 271768, CONCORD, CA 94527-1768.**
    **(D) "Holder"** is Lender or any person or entity who takes this Agreement by transfer and is entitled to receive payments under this Agreement.
    **(E) "Account"** means your home equity line of credit account with Holder.
    **(F) "Loan"** or **"Loans"** means any money advanced to you by Holder when you access the Account.
    **(G) "Credit Limit"** means the maximum aggregate amount of principal of the Loans that Holder will allow you to owe under this Agreement, unless otherwise agreed. **The Credit Limit is indicated above.**
    **(H) "Account Balance"** means the total of the unpaid principal of the Loans, plus earned but unpaid **FINANCE CHARGES**, fees, and credit insurance premiums.
    **(I) "Minimum Balance"** means the minimum amount of principal of all Loans that you must maintain under the Account. **The Minimum Balance is indicated above.**
    **(J) "Initial Advance"** means the minimum amount of the Loan that you must accept to open the Account. **The Initial Advance is indicated above.**
    **(K) "Minimum Advance"** means the minimum amount of a Loan that you must request by any means other than the credit card or cards that Holder furnishes to you to make purchases or receive advances ("Credit Card"). **The Minimum Advance is indicated above.**
    **(L) "Draw Period"** means the period of time during which you may request Loans and must make payments on your Account Balance. **The Draw Period is indicated above.**
    **(M) "Repayment Period"** means the period of time beginning at the end of the Draw Period during which you no longer may request Loans and must repay the Account Balance. **The Repayment Period is indicated above.**
    **(N) "Billing Statement"** means a statement furnished by Holder each Billing Cycle (as defined in subsection (O) below) that shows, among other things, Loans, **FINANCE CHARGES**, other charges, payments made, other credits, the previous Account Balance, the current Account Balance, and the required payment for the Account during the Billing Cycle.
    **(O) "Billing Cycle"** means the regular period or interval between the days or dates of the Billing Statements during which **FINANCE CHARGES** accrue and that will be used to determine the amount of your payment and when your payment is due. **The Billing Cycle is monthly.**
    **(P) "Index"** means the lowest base rate on corporate loans at large U.S. money center commercial banks that *The Wall Street Journal* publishes as the prime rate.

## 2. OPENING YOUR ACCOUNT

    The Account will be opened when you have signed and delivered in acceptable form all documents considered necessary by Holder and Holder makes the Initial Advance to you. Each of you who signs this Agreement is jointly and

Case 18-41099 Doc 89-1 Filed 06/25/18 Entered 10/25/18 08:59 Page 8 of 30

individually obligated to keep all of the promises made in this Agreement, and, as such, Holder may require any of you to pay all amounts due under this Agreement. Each of you agrees not to give Holder conflicting instructions under this Agreement.

### 3. ACCESSING YOUR ACCOUNT

You may access the Account after any right you have to cancel this Agreement expires and all of Holder's conditions have been met. You may access the Account initially only for an amount equal to or greater than the Initial Advance. Thereafter, you may access the Account only for an amount equal to or greater than the Minimum Advance. Holder at Holder's option may without obligation make a Loan in an amount that is less than the Minimum Advance; by doing so, however, Holder does not waive the right to later refuse to make such a Loan.

You may access the Account by: (a) writing a check using one of the checks that Holder furnishes to you ("Checks"); (b) authorizing Holder to pay a third party or account; or (c) any other method acceptable to Holder. Each of you who signs this Agreement may access the Account jointly or individually, and Holder may rely on instructions from any one of you with regard to this Agreement.

You may not use any Loan provided by Holder to make payments on the Account. In addition, Holder reserves the right not to honor a Check under the following circumstances: (a) the Check is post-dated (if a post-dated Check is paid and as a result any other Check is returned, Holder will not be responsible); (b) a Check or Checks have been reported lost or stolen; (c) the Check is not signed by one of you; or (d) the Account has been terminated or suspended as provided in this Agreement or can be so terminated or suspended if Holder pays the Check. Dishonor of a Check by Holder for any reason provided in this Agreement will not constitute wrongful dishonor. Holder's liability otherwise for wrongful dishonor, if any, of a Check is limited to your actual damages.

### 4. AVAILABILITY OF LOANS

You may access the Account and receive a Loan during the Draw Period, subject to the provisions of this Agreement. Holder at Holder's option may extend the Draw Period. During the Draw Period, you may borrow against the Account, repay any portion of the Account Balance, and re-borrow such portions up to the Credit Limit.

You may not access the Account so as to cause the Account Balance to exceed the Credit Limit. However, Holder at Holder's option may make a Loan that causes the Account Balance to exceed the Credit Limit; by doing so, however, Holder does not waive the right to later refuse to make such a Loan. If Holder agrees to make a Loan that causes the Account Balance to exceed the Credit Limit, you agree to execute additional security documents.

### 5. FINANCE CHARGES

In addition to the amount of any Loans made to you, you agree to pay Holder a **FINANCE CHARGE ("FINANCE CHARGE"** or **"FINANCE CHARGES")** on the Account Balance. The Account Balance for each day is determined by taking the Account Balance at the beginning of that day and (a) subtracting any unpaid **FINANCE CHARGE**, fees, and credit insurance premiums that are due; (b) subtracting the portion of any payments or credits received by Holder that day that apply to the repayment of the Loans; and (c) adding any Loans made that day.

The **FINANCE CHARGE** on a Loan begins to accrue immediately from the time Holder makes the Loan to you. There is no "free ride period" during which **FINANCE CHARGES** will not accrue.

The **FINANCE CHARGE** is determined for each day by applying a daily periodic rate ("Daily Periodic Rate") to the Account Balance for that day; the Daily Periodic Rate is 1/365th of the **ANNUAL PERCENTAGE RATE** applicable to that day. The total **FINANCE CHARGE** for each Billing Cycle is determined by adding together the **FINANCE CHARGE** for the actual number of days during the Billing Cycle.

**The Initial ANNUAL PERCENTAGE RATE is indicated on the first page of this Agreement.** The manner in which the **ANNUAL PERCENTAGE RATE** will change will be determined by the box marked on the first page of this agreement.

The **ANNUAL PERCENTAGE RATE** will increase or decrease if the Index increases or decreases; the corresponding increase or decrease in the Daily Periodic Rate will be determined as described above. An increase or decrease in the **ANNUAL PERCENTAGE RATE** will result in a corresponding increase or decrease in the **FINANCE CHARGE** and may result in a corresponding increase or decrease in your monthly payment. The Index may change daily; however, the Index in effect on the day the **ANNUAL PERCENTAGE RATE** is adjusted will be used to determine the new **ANNUAL PERCENTAGE RATE**. We will use the most recent index value available to us as of the last business day of the month prior

Case 8:14-ap-00999 Doc 89-1 Filed 06/25/18 Entered 10/25/18 08:59 Page 9 of 30

to an **ANNUAL PERCENTAGE RATE** change. Any change in the **ANNUAL PERCENTAGE RATE** will take effect on the first day of each calendar quarter.

The **ANNUAL PERCENTAGE RATE** can change quarterly on the first day of January, April, July, and October. There is no limit on the amount by which the **ANNUAL PERCENTAGE RATE** can change during any one year period. The **ANNUAL PERCENTAGE RATE** will never exceed the lesser of: 18.00% or the highest allowable rate for this type of Agreement as determined by applicable state or federal law ("Maximum **ANNUAL PERCENTAGE RATE**"). The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

## 6. PAYMENTS
You promise to pay to Holder any amounts owed under this Agreement as follows:

**(A) Draw Period**
During the Draw Period, no later than the payment date specified in your Billing Statement, you must pay at least the Minimum Monthly Draw Period Payment. The "Minimum Monthly Draw Period Payment" is the greatest of: (1) the amount of accrued **FINANCE CHARGES**; or (2) $75.00.

**(B) Repayment Period**
During the Repayment Period, no later than the payment date specified in your Billing Statement you must pay at least the "Minimum Monthly Repayment Period Payment". The Minimum Monthly Repayment Period Payment is the greater of: (1) an amount equal to 1.5% of your Account Balance or (2) $75.00.

During the Draw and Repayment Periods, in no event will the minimum monthly payment fall below $75.00. If the Account Balance is less than $75.00, you must pay it in full.

The required minimum payment may not repay the outstanding balance by the end of the repayment period. If this happens, you will be required to make a single balloon payment at the end of the repayment period. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender (which may or may not be us) willing to lend you the money. If you refinance the balloon payment with us, you may have to pay some or all of the closing costs.

## 7. FEES AND CHARGES
You agree to pay the following additional fees and charges:

**(A) Annual Charge**
An annual fee of $60.00 will be charged to your account on April 1st of each year. The annual fee will be waived when the average monthly outstanding balance for the previous 12 months was $5,000 or more. If the account has been opened for 6 months or less by April 1 of any year, no fee will be charged.

**(B) Late Charge**
Your payment will be late if it is not received by us within **10 days of the "Payment Due Date" shown** on your **periodic statement.** If your payment is late you may be assessed a late charge of $45.00.

**(C) Other Prepaid Finance Charges:** You will be charged the following prepaid **FINANCE CHARGES** at the time your account is opened:

Payable To Others:

| | |
|---|---|
| Mortgage Broker Fee to **GENESIS RESIDENTIAL FUNDING, INC.** | $1,250.00 |
| Processing Fee to **GENESIS RESIDENTIAL FUNDING, INC.** | $795.00 |
| Underwriting Fee to CU Funding | $695.00 |
| Administration Fee to CU Funding | $795.00 |
| Overnight Delivery Fee to CU Funding | $65.00 |
| Closing/Escrow Fee to **FINANCIAL TITLE** | $300.00 |
| Doc Fee to CU Funding | $250.00 |

Payable To Cal State 9 Credit Union:

| | |
|---|---|
| Flood Certification | $15.00 |
| Tax Service Fee | $50.00 |
| Wire Transfer Fee to Cal State 9 Credit Union | $15.00 |

**(D) Other Charges:** You also agree to pay the following fees and charges necessary to open your account:
Payable to Others:

Case 18-41099 Doc 31 Filed 06/27/18 Entered 06/25/18 08:59:54 Page 7 of 10 of 30

| Appraisal Fee to GENESIS RESIDENTIAL FUNDING, INC. | $350.00 |
|---|---|
| Credit Report Fee to CU Funding | $13.00 |
| Notary Fees to FINANCIAL TITLE | $125.00 |
| Recording Fee to FINANCIAL TITLE | $75.00 |
| Recording Request for Notice of Default | $9.00 |
| Title Insurance to FINANCIAL TITLE | $200.00 |
| Document Preparation Fee to FINANCIAL TITLE | $ _____ |
| Payable To Cal State 9 Credit Union: | |
| Lenders Documentation Review Fee | $40.00 |
| Membership Fee | $15.00 |

(E) **Conditions Under Which Other Charges May be Imposed.** You agree to pay all the other fees and charges to your Credit Line as set forth below:

**Returned Items.** You may be charged $18.00 if you pay your Credit Line obligations or advance your credit line with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $15.00 when you request a stop payment on your account.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account a Research Fee of $25.00 per hour plus Photocopy Fees of $.50 per copy whenever you request research and /or photocopies of checks or statements for purposes other than a billing error inquiry. However, if no research is required, a $3.50 per copy charge will be imposed for the time it takes us to located, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Scheduled Fee Changes.** Your Annual Membership Fee may increase annually commencing with the first anniversary of your Account by an amount not to exceed $5.00 per year. The amount of your annual fee will appear on the first periodic statement following the anniversary of your Account.

**Other Fee Increases.** The Returned Payment Fee, Stop Payment Fee and Research Fee applicable to your Account may increase annually effective August 1st of each year commencing with the first year your Account is opened. The amount of these fees will increase to the amount then in effect as reflected in the credit union's information on credit union services. You may obtain a copy of the credit union's current information or credit union's services by telephoning or sending a written request to the billing address shown on your periodic statement, or by telephoning or inquiring at the credit union office at which you opened your Account.

**Additional Security Interest Fees.** A Subordination Fee of $300.00 will be due at the time you request, and Lender agrees, to subordinate its lien in favor of a senior lienholder in order to facilitate your refinance of or additional borrowing increase to a prior lien. Lender is not obligated to agree to such a request; may deny your request to subordinate its lien; and may request that you either reduce the amount of your existing credit line or pay Lender in full for all amounts due. In addition, you may be required to pay a Beneficiary Statement Fee or a Payoff Demand Statement Fee of $25.00 as provided by Section 2943 of the California Civil Code at the time you authorize a future lender or title insurance company to obtain a statement of the condition or a statement of all amounts due under your line of credit.

**Lien Release Fees.** In addition to all other charges, you agree, to the extent not prohibited by law, to pay all fees for release of Lender's security interest in collateral securing this loan. You will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is $45.00.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Modification Fee: A Modification Fee may be charged at the time you request a change to your credit limit or maturity date of your line of credit. The amount of this other charge is $200.00.

**8. NOTICES**

Unless applicable law requires a different method, any notice that must be given to you under this Agreement will be given by delivering it or mailing it by first class mail to the Property Address above or at a different address if you give Holder

Case 18-41099 Doc 31 Filed 06/22/18 Entered 06/25/18 08:59:54 Page 8 of 11
of 30

a notice of your different address. Any notice that must be given to Holder under this Agreement will be given by delivering it or mailing it by first class mail to the Holder at the address stated in Section 1(C) above or at a different address if you are given a notice of that different address.

## 9. SECURITY

The Account will be secured by a lien taken against your home pursuant to a separate Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated the same date as this Agreement. The Security Instrument requires you to take certain actions to protect your home, which is located at the address shown above ("Property"). You could lose the Property and your home if you do not meet the conditions of this Agreement or the Security Instrument. Some of the conditions of the Security Instrument are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 9 "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Debt. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Debt in full. If Borrower fails to pay the Secured Debt in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

You also agree to obtain and maintain such insurance on the Property as Holder may require; you agree to maintain such insurance in the amounts and for the periods Holder requires. Unless prohibited by applicable law, the Account will be secured as well by proceeds of such insurance. You may obtain such insurance from the carrier of your choice, subject to Holder's right to disapprove your choice, which right will not be exercised unreasonably.

If you fail to keep the insurance required under this Section, Holder may obtain such insurance coverage at Holder's option and your expense, and Holder may charge you a fee to do so. Holder is under no obligation to purchase any particular type or amount of coverage; as such, you, your equity in the Property, or the contents of the Property may not be protected to the extent you desire. Any amount paid by Holder under this Section will be added as a Loan under this Agreement and be subject to the FINANCE CHARGE.

## 10. CREDIT AND PROPERTY INFORMATION

You agree to furnish personal financial information and information about the Property and your occupation of the Property reasonably requested by Holder from time to time. Such information must be furnished to Holder within a reasonable time but in no event later than 30 days after Holder's request. In addition, you authorize Holder, at Holder's expense, to make or have made credit inquiries, and you authorize any person to whom Holder makes such inquiries to furnish Holder with the requested information. You also authorize Holder to release information regarding the status and history of the Account to third persons, including without limitation credit bureaus, merchants, and financial institutions, to the extent permitted by applicable law.

## 11. ASSIGNMENT

Holder may assign or transfer this Agreement and the Security Instrument without notice to you. You may not assign or transfer your rights and obligations under this Agreement without Holder's written authorization; however, this Agreement is binding upon your heirs, successors, and legal representatives.

## 12. TAX DEDUCTIBILITY

You should consult a tax advisor regarding the deductibility of interest and charges under the Account.

## 13. DEFAULT

You will be in default under this Agreement if:

(A) You engage in fraud or material misrepresentation in connection with the Account or with any aspect of the

Case 18-10991 Doc 81 Filed 06/02/18 Entered 06/25/18 08:59:54 Page 12 of 30

Account, including without limitation your application for the Account and your occupancy of the Property;

(B) You do not meet the repayment terms under this Agreement;

(C) Your action or inaction adversely affects the collateral for the Account (including without limitation the Property) or Holder's rights in the collateral under the Security Instrument, including without limitation: (i) your failure to maintain insurance as required under the Security Instrument; (ii) your transfer of the Property as provided in the Security Instrument; (iii) your failure to maintain the Property or use of the Property in a destructive manner; (iv) your commission of waste of the Property; (v) your failure to pay taxes due on the Property or your failure to act such that a lien superior to Holder's lien is filed against the Property; (vi) the death of all of you; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against you that subjects the Property to action that adversely affects Holder's interest in the Property; (ix) the creation of a lien on the Property without Holder's permission; or (x) a superior lien holder forecloses on the Property such that Holder's interest in the Property is adversely affected.

## 14. REMEDIES FOR DEFAULT

If you are in default, Holder may terminate the Account, require you to pay the entire outstanding Account Balance, and charge a termination fee and any collection fees unless otherwise prohibited from doing so by applicable law. Holder at Holder's option also may take one or more lesser actions. Such lesser actions may include without limitation reducing the Credit Limit. Holder may take action under this Section only after complying with any notice or cure provisions required under applicable law. In the event Holder elects not to terminate the Account or take lesser action when you are in default, Holder does not forfeit or waive Holder's right to do so at a later time or to do so if you are in default again.

## 15. SUSPENSION OF ACCOUNT AND REDUCTION OF CREDIT LIMIT

Unless otherwise prohibited from doing so by applicable law, Holder may temporarily suspend the Account or reduce the Credit Limit if:

(A) The value of the Property declines significantly below the Property's appraised value for purposes of the Account;

(B) Holder reasonably believes you will not be able to meet the repayment requirements under this Agreement due to a material change in your financial circumstances;

(C) You are in default of a material obligation of this Agreement or the Security Instrument; for purposes of this Agreement a material obligation will include without limitation your obligation to supply Holder with the credit and property information required under Section 10 of this Agreement;

(D) A governmental action prevents Holder from imposing the **ANNUAL PERCENTAGE RATE** or impairs Holder's security interest under the Security Instrument such that the value of the security interest is less than 120 percent of the Credit Limit;

(E) A regulatory agency has notified Holder that continued advances would constitute an unsafe practice;

(F) The **ANNUAL PERCENTAGE RATE** reaches the maximum rate permitted under this Agreement; or

(G) Any of you requests to do so; provided, that Holder may require that any such request be in writing and sent to Holder by certified mail, and that Holder may require that any request to reinstate the Account also be in writing and sent by all of you.

If Holder suspends the Account or reduces the Credit Limit, Holder will send you notice of Holder's decision as provided in Section 8 of this Agreement. Any request by you to reinstate the Account or the Credit Limit must be in writing and sent to Holder as provided in Section 8 of this Agreement.

## 16. CHANGING THE TERMS OF THIS AGREEMENT

Holder may not change the terms of this Agreement except under the following circumstances:

(A) Holder may change the Index and Margin if the original Index or any replacement index is no longer available. Any new Index must have a historical movement similar to the original Index and together with a new Margin must result in an **ANNUAL PERCENTAGE RATE** substantially similar to the **ANNUAL PERCENTAGE RATE** in effect at the time the original Index or replacement index became unavailable.

(B) Holder may make changes that you agree to in writing.

(C) Holder may make changes that unequivocally benefit you throughout the remaining term of the Account.

(D) Holder may make changes to insignificant terms of this Agreement.

Unless otherwise prohibited from doing so by applicable law, Holder may refuse to make additional Loans or reduce the Credit Limit whenever the Maximum **ANNUAL PERCENTAGE RATE** is reached.

## 17. CANCELING THE ACCOUNT

You may cancel the Account at any time by notifying Holder in writing as provided in Section 8 above. Cancellation of the Account by any of you will cancel the Account for all of you. However, Holder may release any of you from your obligations under this Agreement without releasing the remainder of you from your obligations.

If the Account is canceled or terminated for any reason, you will not be entitled to a refund of or a credit for any initial

Case 18-41099   Doc 39-1   Filed 06/29/18   Desc Main Document   Page 13 of 30

annual fees or other fees and charges payable under the Account, unless otherwise required by applicable law. In addition, you must return to Holder the Checks, and any other devices you may have to access the Account. Any further use of such devices may be considered fraudulent. Regardless of such cancellation or termination, you will remain obligated to repay the Account Balance in full, including any money advanced to you after the Account has been canceled or terminated.

Cal State 9 Credit Union has agreed to credit you $1,962.00 towards non-reoccurring closing costs at the time of your Home Equity Line of Credit Account is opened provided your Account credit line amount is equal to or greater than $30,000 and your initial advance is equal to or greater than $10,000. **If you close your Home Equity Line of Credit Account in less than three years from the opening date, or if you fail to maintain a minimum balance of $10,000 for the first 6 months, you will be required to reimburse Cal State 9 Credit Union for the $1,962.00 closing cost credit you initially received as a credit against the non-reoccurring closing costs.** The amount of the closing cost credit you receive will also be itemized on your HUD1 or HUD1A Estimated and Final Settlement Statement.

## 18. LOAN CHARGES

If this Agreement is subject to a law that sets maximum Loan charges, and that law is finally interpreted so that the **FINANCE CHARGE** or other Loan charges collected or to be collected in connection with the Account exceed the permitted limits, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. Holder may choose to make this refund by reducing the principal owed under the Account or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge. Your acceptance of any such refund made by direct payment to you will constitute a waiver of any right of action you might have arising out of such overcharge.

## 19. SEVERABILITY

In the event that any provision or clause of this Agreement or the Security Instrument conflicts with applicable federal, state, or local law, such provision or clause will be considered changed to the extent permissible and necessary to comply with such law. Otherwise, such conflict will not affect other provisions of this Agreement or the Security Instrument that can be given effect without the conflicting provision.

## 20. YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and Holder's responsibilities under the Fair Credit Billing Act.

### Notify Holder In Case of Errors or Questions About Your Bill

If you think the Billing Statement is wrong, or if you need more information about a transaction on the Billing Statement, write Holder at the address listed on the Billing Statement. Write to Holder as soon as possible. Holder must hear from you no later than 60 days after Holder sent you the first Billing Statement on which the error or problem appeared. You can telephone Holder, but doing so will not preserve your rights.

In your letter, give Holder the following information:

(A) Your name and account number.

(B) The dollar amount of the suspected error.

(C) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Holder to pay the Account automatically from your savings, checking, or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Holder three business days before the automatic payment is scheduled to occur.

### Your Rights and Holder's Responsibilities After Holder Receives Your Written Notice

Holder must acknowledge your letter within 30 days, unless Holder has corrected the error by then. Within 90 days, Holder must either correct the error or explain why Holder believes the Billing Statement was correct.

After Holder receives your letter, Holder cannot try to collect any amount you question or report you as delinquent. Holder can continue to bill you for the amount you question, including **FINANCE CHARGES**, and Holder can apply any unpaid amount against the Credit Limit. You do not have to pay any questioned amount while Holder is investigating, but you are still obligated to pay the parts of the Billing Statement that are not in question.

If Holder finds that Holder made a mistake on the Billing Statement, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If Holder did not make a mistake, you may have to pay any **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, Holder will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Holder thinks you owe, Holder may report you as delinquent. However, if Holder's explanation does not satisfy you and you write to Holder within ten days telling Holder that you still refuse to pay, Holder must tell anyone Holder reports you to that you have a question about the Billing Statement. And Holder must tell you the name of anyone Holder reported you to. Holder must tell anyone Holder reports you to that the matter has been settled between you and Holder when it finally is.

If Holder does not follow these rules, Holder can't collect the first $50.00 of the questioned amount, even if the Billing Statement was correct.

## 21. COLLECTION COSTS
Holder may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate an automatic stay or injunction), and appeals. You will also pay any court costs, in addition to all other sums provided by law.

## 22. DELAY IN ENFORCEMENT
Holder may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If holder delays or waives any rights, Holder may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of Holder's right to terminate your account in the future if you have not paid.

## 23. PREPAYMENT
Subject to paragraph 17, you may prepay all or any amount owing under this Account at any time without penalty, except Holder will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Account. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Cal State 9 Credit Union, P.O. Box 271768, Concord, CA 94527-1768.

## 24. TAX CONSEQUENCES
You understand that neither Holder, nor any of Holder's employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Account, including the deductibility of interest, and that neither Holder nor Holder's employees or agents will be liable in the event interest on your Account is not deductible. You should consult your own tax advisor for guidance on this subject.

## 25. NOTIFY US OF INACCURATE INFORMATION
Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy should be sent to Holder at the address on your periodic billing statement.

## 26. GOVERNING LAW
This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of California. This Agreement has been accepted by us in the State of California.

## 27. CHOICE OF VENUE
If there is a lawsuit, you agree upon Holder's request to submit to the jurisdiction of the courts of Contra Costa County, State of California.

**28. ACKNOWLEDGEMENT**

By signing this Agreement, you acknowledge that you have read this Agreement. By signing below, you agree to the terms and conditions of this Agreement. You also acknowledge and agree that you received a complete copy of this Agreement.

_____ 11-29-06
- BORROWER - Marc S. Protenic - DATE -

*[Sign Original Only]*

Case 18-44099   Claim 39-1  Filed 06/29/18  Desc Main  10/25/18 08:59:54  Page 16 of 30

Borrower: MARC PROTENIC
Loan No: REDACTED
Date of Loan: December 1, 2006
Property Address: 22 CENTENNIAL WAY,
                  SAN RAMON CA 94583

## **ALLONGE**

Cal State 9 Credit Union, a California Credit Union, does hereby pay to the order of Bosco Credit LLC , its successors and assigns, without recourse all of its rights and interests, effective as of May 16, 2008.


                                    CAL STATE 9 CREDIT UNION

                    By:    _Sarah Leal_____
                           Sarah Leal
                    Its:   HELOC Assistant Manager

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| DEAN PROBER          Bar No. 106207 <br> Prober & Raphael <br> 20750 Ventura Blvd., Suite 100 <br> Woodland Hills, CA 91364 <br> TELEPHONE NO.: (818) 227-0100    FAX NO: *(Optional)* (818) 227-0637 <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):*    BOSCO CREDIT LLC. | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA |
|---|
| STREET ADDRESS: 725 Court Street <br> MAILING ADDRESS: Martinez, CA 94553 <br> CITY AND ZIP CODE: <br> BRANCH NAME: Martinez, Unlimited Civil |

| PLAINTIFF: BOSCO CREDIT LLC. |
|---|
| DEFENDANT: MARC S. PROTENIC AKA MARC S. TROTENIC AKA MARC PROTENIC |

| JUDGMENT | CASE NUMBER: |
|---|---|
| ☐ By Clerk    ☒ By Default    ☐ After Court Trial <br> ☒ By Court    ☐ On Stipulation    ☐ Defendant Did Not Appear at Trial | C09-03098 |

## JUDGMENT

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
        (1) ☐ plaintiff's testimony and other evidence.
        (2) ☒ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court    ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*

        before *(name of judicial officer):*
   b. Appearances by:
        ☐ Plaintiff (name each):               ☐ Plaintiff's Attorney (name each):
        (1)                                 (1)
        (2)                                 (2)
        ☐ Continued on Attachment 3b.

        ☐ Defendant (name each):             ☐ Defendant's attorney (name each):
        (1)                                   (1)
        (2)                                   (2)
        ☐ Continued on Attachment 3b.
   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was requested.

Page 1 of 2

| Form Approved for Optional Use <br> Judicial Council of California <br> JUD-100 [New January 1, 2002] | **JUDGMENT** | Code of Civil Procedure, §§ 585, 664.6 <br> F.130-135 |
|---|---|---|

| PLAINTIFF: BOSCO CREDIT LLC. | CASE NUMBER: |
|---|---|
| DEFENDANT: MARC S. PROTENIC AKA MARC S. TROTENIC AKA MARC PROTENIC | C09-03098 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** [X] **THE COURT**    [ ] **THE CLERK**

4. [ ] **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is
   a. [X] for plaintiff *(name each):*
   BOSCO CREDIT LLC.

   c. [ ] for cross-complainant *(name each):*

   and against defendant *(names):*
   MARC S. PROTENIC AKA MARC S. TROTENIC AKA MARC PROTENIC

   and against cross-defendant *(name each):*

   [ ] Continued on Attachment 5a.

   [ ] Continued on Attachment 5c.

   b. [ ] for defendant *(name each):*

   d. [ ] for cross-defendant *(name each):*

6. **Amount.**
   a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

   c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) [X] Damages | $ | 124,943.36 |
|---|---|---|
| (2) [X] Prejudgment interest at the annual rate of 8.75 % | $ | 24,259.50 |
| (3) [X] Attorney fees | $ | 550.00 |
| (4) [X] Costs | $ | 421.56 |
| (5) [X] Other *(specify)* Late Charges | $ | 1,035.00 |
| (6) TOTAL | $ | 151,209.42 |

| (1) [ ] Damages | $ |
|---|---|
| (2) [ ] Prejudgment interest at the annual rate of % | $ |
| (3) [ ] Attorney fees | $ |
| (4) [ ] Costs | $ |
| (5) [ ] Other *(specify)* | $ |
| (6) TOTAL | $ |

   b. [ ] Plaintiff to receive nothing from defendant named in item 5b.
   [ ] Defendant named in item 5b to recover costs $
   [ ] and attorney fees $

   d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.
   [ ] Cross-defendant named in item 5d to recover costs $
   [ ] and attorney fees $

7. [ ] Other *(specify):*

Date: MAR 4 – 2010

BARRY BASKIN

[ ] _____
JUDICIAL OFFICER

Date: _____ [ ] Clerk, by _____, Deputy

---

(SEAL)

**CLERK'S CERTIFICATE** *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by _____, Deputy

JUD-100 [New January 1, 2002]    **JUDGMENT**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State bar number, and telephone number):
Recording requested by and return to:

Dean Prober                    Bar No. 106207
PROBER & RAPHAEL
20750 VENTURA BLVD., SUITE 100
WOODLAND HILLS, CA 91364
(818) 227-0100

[X] ATTORNEY FOR   [X] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street
MAILING ADDRESS: Martinez, CA 94553
CITY AND ZIP CODE:
BRANCH NAME: Martinez, Unlimited Civil

**CONTRA COSTA Co Recorder Office**
**STEPHEN L. WEIR, Clerk-Recorder**
**DOC- 2010-0112489-00**
Check Number 167520
Friday, JUN 04, 2010 14:31:43
CPY    $3.00 LIE        $7.00 MOD    $2.00
REC   $12.00 FTC       $1.00 RED     $1.00
RED    $1.00
Ttl Pd    $27.00        Nbr-0000492529
                        lrc/R9/1-2

PLAINTIFF: BOSCO CREDIT LLC.

DEFENDANT: MARC S. PROTENIC AKA MARC S. TROTENIC AKA MARC PROTENIC

CASE NUMBER: C09-03098

## ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS
[ ] Amended

FOR COURT USE ONLY

**LIEN NOTICE MAILED**

1. The [X] judgment creditor [ ] assignee of record applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address

   Marc S. Protenic AKA Marc S. Trotenic aka Marc Protenic
   110 Siena Place
   Danville, CA 94506

   b. Driver's license no. [last 4 digits] and state:          [X] Unknown
   c. Social security no. [last 4 digits] 7088                  [ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to (name and address): Marc S. Protenic AKA Marc S. Trotenic aka Marc Protenic
      110 Siena Place
      Danville, CA 94506

2. [ ] Information on additional judgment debtors is shown on page 2.

3. Judgment creditor (name and address):
   Bosco Credit LLC.
   101 Hudson Street, 25th Floor
   Jersey, NJ 07302

Date: March 26, 2010
DEAN PROBER
              (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.

5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

▶ _(signature)_
              (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 151,209.42

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on (date): ~~March 4, 2010~~ 3-16-10
   b. Renewal entered on (date):

9. [ ] This judgment is an installment judgment.

[SEAL]
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA

This abstract issued on (date):
JUN - 3 2010

10. [ ] An [ ] execution lien [ ] attachment lien is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of (name and address):

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until (date):

12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

Clerk, by _(signature)_ , Deputy
          J. Myovich

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

## ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS

F.130-135
Contra Costa

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674,700.190

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF: BOSCO CREDIT LLC. | CASE NUMBER: |
|---|---|
| MARC S. PROTENIC AKA MARC S. TROTENIC AKA MARC DEFENDANT: PROTENIC | C09-03098 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*          14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.          Name and last known address                17.          Name and last known address

Driver's license no. [last 4 digits]
and state:                                        ☐ Unknown

Social security no. [last 4 digits]:               ☐ Unknown

Summons was personally served at or mailed to *(address):*

Driver's license no. [last 4 digits]
and state:                                        ☐ Unknown

Social security no. [last 4 digits]:               ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.          Name and last known address                19.          Name and last known address

Driver's license no. [last 4 digits]
and state:                                        ☐ Unknown

Social security no. [last 4 digits]:               ☐ Unknown

Summons was personally served at or mailed to *(address):*

Driver's license no. [last 4 digits]
and state:                                        ☐ Unknown

Social security no. [last 4 digits]:               ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

**END OF DOCUMENT**

Michelle R. Ghidotti-Gonsalves, Esq. (SBN 232837)
Kristin A. Zilberstein (SBN 200041)
Jennifer R. Bergh, Esq. (SBN 305219)
LAW OFFICES OF MICHELLE GHIDOTTI
1920 Old Tustin Ave.
Santa Ana, CA 92705
Ph: (949) 427-2010
Fax: (949) 427-2732
mghidotti@ghidottilaw.com

Attorney for Creditor
Bosco Credit LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In Re: | ) CASE NO.: 18-41099 |
| | ) |
| Marc S Protenic and Dena J Protenic, | ) CHAPTER 11 |
| | ) |
| Debtors. | ) **CERTIFICATE OF SERVICE** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Orange, State of California. I am over the age of eighteen and not a party to the within action. My business address is: 1920 Old Tustin Ave., Santa Ana, CA 92705.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

1

On June 29, 2018 I served the following documents described as:

- **PROOF OF CLAIM**

on the interested parties in this action by placing a true and correct copy thereof in a sealed

envelope addressed as follows:

(Via United States Mail)

| **Debtor** | **U.S. Trustee** |
|---|---|
| Marc S Protenic | Office of the U.S. Trustee/Oak |
| 110 Sienna Place | Office of the United States Trustee |
| Danville, CA 94506 | Phillip J. Burton Federal Building |
| | 450 Golden Gate Ave. 5th Fl., #05-0153 |
| **Joint Debtor** | San Francisco, CA 94102 |
| Dena J Protenic | |
| 110 Sienna Place | **U.S. Trustee's Counsel** |
| Danville, CA 94506 | Lynette C. Kelly |
| | Office of the United States Trustee |
| **Debtor's Counsel** | Phillip J. Burton Federal Building |
| Mufthiha Sabaratnam | 450 Golden Gate Ave. 5th Fl., #05-0153 |
| Sabaratnam and Associates | San Francisco, CA 94102 |
| 1300 Clay St. #600 | |
| Oakland, CA 94612 | |

_xx___(By First Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

_____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the Eastern District of California

__xx__(Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 29, 2018 at Santa Ana, California

_/s / Jeremy Romero_
Jeremy Romero

EXHIBIT "2"- Schedules A/B

| Debtor 1 | **Marc S Protenic** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Dena J Protenic** | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: NORTHERN DISTRICT OF CALIFORNIA

Case number _____

☐ Check if this is an
amended filing

# Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ■ No. Go to Part 2.
   ☐ Yes.  Where is the property?

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ☐ No
   ■ Yes

| 3.1 | Make: | **Dodge** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|---|
| | Model: | **Durango** | ☐ Debtor 1 only | | |
| | Year: | **2006** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: | **190000** | ■ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | | |
| | | | ■ Check if this is community property (see instructions) | **$2,000.00** | **$2,000.00** |

| 3.2 | Make: | **Mercedez Benz** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
|---|---|---|---|---|---|
| | Model: | **Mercedez** | ☐ Debtor 1 only | | |
| | Year: | **2002** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: | **153,000** | ■ Debtor 1 and Debtor 2 only | | |
| | Other information: | | ☐ At least one of the debtors and another | | |
| | | | ■ Check if this is community property (see instructions) | **$3,000.00** | **$3,000.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ■ No
   ☐ Yes

Case: 18-41099    Doc# 39-1    Filed: 10/25/18    Entered: 10/25/18 08:59:54    Page 25 of 30

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................................=>

| $5,000.00 |

**Part 3:**   Describe Your Personal and  Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6.  **Household goods and furnishings**
    *Examples:* Major appliances, furniture, linens, china, kitchenware
    ☐ No
    ☑ Yes.  Describe.....

| Living room Furniture, Appliances Rental property | $1,000.00 |

7.  **Electronics**
    *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
    ☐ No
    ☑ Yes.  Describe.....

| 1 TV; 3 computers (old) Golf Clubs | $400.00 |

8.  **Collectibles of value**
    *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
    ☑ No
    ☐ Yes.  Describe.....

9.  **Equipment for sports and hobbies**
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
    ☐ No
    ☑ Yes.  Describe.....

| Tools, Sports equipment | $0.00 |

10.  **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☐ No
    ☑ Yes.  Describe.....

| 1 Rifle | $100.00 |

11.  **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☑ No
    ☐ Yes.  Describe.....

12.  **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ☑ Yes.  Describe.....

| Wedding Ring; one man's ring and costume jewellry | $500.00 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                                        Best Case Bankruptcy

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ■ No
    ☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes.  Give specific information.....

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
    for Part 3. Write that number here ...........................................................................

    | **$2,000.00** |

| **Part 4:** | **Describe Your Financial Assets** |
| --- | --- |

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
| --- | --- |

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ■ No
    ☐ Yes.................................................................

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
    institutions. If you have multiple accounts with the same institution, list each.
    ☐ No
    ■ Yes......................                    Institution name:

    17.1.                                         **Wells Fargo Bank Checking and savings
                                                  accounts**                                          **$100.00**

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes..................            Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and
    joint venture**
    ■ No
    ☐ Yes.  Give specific information about them...................
                      Name of entity:                                  % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
                      Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ☐ No
    ■ Yes. List each account separately.
                      Type of account:           Institution name:

                                                  **Retirement Stock not vested**                     **$0.00**

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. ......................        Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☐■ No
☐ Yes.............        Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☐■ No
☐ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☐■ No
☐ Yes. Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☐■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☐ No
☐■ Yes. Give specific information about them...

| | |
| --- | --- |
| CA Insurance Agents License | $0.00 |

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
| --- | --- |

**28. Tax refunds owed to you**

☐■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

                                            _____

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☐■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☐■ No
☐ Yes. Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☐■ No
☐ Yes. Name the insurance company of each policy and list its value.
                          Company name:                                  Beneficiary:                      Surrender or refund value:

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                      Best Case Bankruptcy

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
    ■ No
    ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ■ No
    ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36.  Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here............................................................................................................

|  |
|---|
| **$100.00** |

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
|---|---|

37. **Do you own or have any legal or equitable interest in any business-related property?**
    ■ No. Go to Part 6.
    ☐ Yes.  Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
|---|---|
|  | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    ■ No. Go to Part 7.
    ☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---|---|

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes. Give specific information.........

54.  Add the dollar value of all of your entries from Part 7. Write that number here  ....................................

|  |
|---|
| **$0.00** |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

| | | | |
|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ......................................................................................................... | | $0.00 |
| 56. | **Part 2: Total vehicles, line 5** | $5,000.00 | |
| 57. | **Part 3: Total personal and household items, line 15** | $2,000.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $100.00 | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. | **Part 7: Total other property not listed, line 54** + | $0.00 | |
| 62. | **Total personal property.** Add lines 56 through 61... | $7,100.00 | Copy personal property total     $7,100.00 |
| 63. | **Total of all property on Schedule A/B**. Add line 55 + line 62 | | $7,100.00 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy